IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE ARBITRATION
BETWEEN:

ACE AMERICAN REINSURANCE
COMPANY,

           Petitioner,

  And

CONSTELLATION REINSURANCE
COMPANY,

          Respondent.

**UNOPPOSED PETITION TO
CONFIRM AND ENTER JUDGMENT
ON ARBITRATION AWARD**

Petitioner, ACE AMERICAN REINSURANCE COMPANY ("Petitioner"), by and through its attorneys, hereby petitions this Court for an Order pursuant to the Federal Arbitration Act confirming the award of the arbitration panel in this matter, made on January 9, 2006, and directing that judgment be entered thereon.  Counsel for Respondent, Constellation Reinsurance Company, has advised Petitioner that Respondent will not oppose the confirmation.

### The Parties

1.    ACE American Reinsurance Company is a Pennsylvania corporation, with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania.

2.    Constellation Reinsurance Company is a New York corporation, with its principal place of business at One Chase Manhattan Plaza, New York, New York.

### Jurisdiction and Venue

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

### The Arbitration

5.     Petitioner and Respondent entered into reinsurance contracts, representative portions of which are attached as Exhibit A.

6.     Each reinsurance contract provided for arbitration of all disputes arising out of the contracts. (*See, e.g.* Exhibit A at Article 23, page 19).  When Respondent failed to make payment on certain claims due under the reinsurance contracts, Petitioner served demands for arbitration.

7.     Pursuant to the arbitration clauses contained in the reinsurance contracts, the Petitioner and Respondent selected Andrew S. Walsh and Earl Davis as arbitrators.  The arbitrators then selected Dewey Clark to serve as the umpire.

8.     On January 4-5, 2006, the arbitrators conducted a hearing and witnesses were called and evidence was presented by Petitioner and Respondent.

9.     On January 9, 2006, the arbitrators rendered their Final Award in writing, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by this reference.

10.     The Final Award requires Respondent to pay $488,212 on or before February 8, 2006.  Respondent failed to pay the award.

### The Award Should Be Confirmed

11.     ACE American Reinsurance Company now petitions this Court for an order confirming and entering judgment on the Final Award.  Confirmation of the award is mandated by Section 9 of the Federal Arbitration Act.

12.     Counsel for Constellation has advised ACE American Reinsurance Company's counsel that it does not object to the confirmation of the award, and that service of this Petition may be effected through delivery to the undersigned counsel for Constellation.

**WHEREFORE**, Petitioner prays for an order of this Court as follows:

1.     That the arbitration award be confirmed;

2.     That judgment be entered on the arbitration award;

Dated: March 9, 2006

ACE AMERICAN REINSURANCE
COMPANY

By: _____
Lawrence Nathanson
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, New Jersey  08054
Tel:  (856) 380-8900
Fax:  (856) 380-8901

TO:     Joseph Ortego, Esq.
Nixon Peabody LLP
990 Stewart Avenue
Garden City, NY  11530

Constellation2-ACE\030706Pet.Con

# EXHIBIT A

*1981 · Treaty (17)*

*PU 2*

*#17*

## INA REINSURANCE COMPANY
## FACULTATIVE DEPARTMENT EXCESS OF LOSS COVER

*eff 1/1/81*

(hereinafter referred to as "Contract")

In consideration of the mutual covenants hereinafter contained and upon the terms and conditions hereinafter set forth

### CERTAIN INSURANCE AND REINSURANCE COMPANIES

(hereinafter collectively referred to as "Reinsurers")

one of whom is

### THE "Subscribing Reinsurer" WHOSE NAME APPEARS ON THE INTERESTS AND LIABILITIES AGREEMENT ATTACHED HERETO

Do hereby indemnify, as herein provided and specified, the

### INA REINSURANCE COMPANY
and its Subsidiaries and Affiliated Companies
which are controlled or managed by
INA REINSURANCE COMPANY
or
### INA INTERNATIONAL CORPORATION

(hereinafter referred to as "INA").

## ARTICLE 1

### BUSINESS COVERED

This Contract is to indemnify the INA as set forth in Article 5 in respect of the excess liability which may accrue to INA under all binders, certificates or contracts of reinsurance, oral or written, or other evidences of liability (hereinafter referred to as "policy" or "policies") issued or contracted for by INA Reinsurance Company's Facultative Department covering anywhere in the world subject to the exclusions set forth in Article 2.

## ARTICLE 2

### EXCLUSIONS

This Contract does not apply to but specifically excludes from coverage hereunder reinsurances issued or contracted for by INA covering the following:

1. War Risks as per Article 3.

2. Liability excluded under the provisions of the

   a) Nuclear Incident Exclusion Clause – Liability –Reinsurance;

   b) Nuclear Incident Exclusion Clause – Physical Damage – Reinsurance;

EXHIBIT
A

      c)    Nuclear Incident Exclusion Clause – Physical Damage and Liability (Boiler and Machinery Policies) – Reinsurance;

copies of which are attached to this Contract.

3.    Aviation business written and classified as such.

4.    Ocean Marine business written and classified as such with respect to amounts of liability accepted by INA beyond $2,500,000 on each risk (i.e., it shall be deemed that INA's liability does not exceed $2,500,000 on any one risk).

5.    Accident and Sickness business.

6.    Surety business.

7.    Financial Guarantee and Insolvency.

8.    Excess of loss reinsurance agreements, not creating any exposure to the reinsurance afforded by this Contract, written on a loss-divisor, retrospective rating or any other cost-plus basis when allowance cannot be made in such premium formula for the recovery of the cost of including such agreements under this Contract.

With respect to Casualty business:

9.    Directors and Officers Liability – with respect to amounts of liability accepted by INA beyond $2,500,000 on each risk (i.e., it shall be deemed that INA's liability does not exceed $2,500,000 on any one risk); further, it is warranted that reinsurance of such risks with respect to any public corporation or firm whose securities are traded on any stock exchange or market will be written only excess of $5,000,000 or more underlying insurance and/or reinsurance.

10.    S.E.C. Liability when written and classified as such.

11.    Fidelity except when written as part of an umbrella or blanket coverage.

12.    Excess of aggregate Workers' Compensation coverage.

13.    Products liability insurance on pharmaceutical risks with respect to amounts of liability accepted by INA beyond $2,500,000 on each risk (i.e., it shall be deemed that INA's liability does not exceed $2,500,000 on any risk).

14.    Workers' Compensation and Employers' Liability in respect of underground coal mining operations. Notwithstanding this exclusion, minor coal mining operations which are incidental to risks falling within the scope of this Contract are covered hereunder.

With respect to Property business:

15. Refineries as such, producing petroleum spirits or gasoline or processing natural gas and/or any risk treating or cracking petroleum products and/or natural gas subsequent to any basic refining process, with respect to amounts of liability accepted by INA beyond $2,500,000 each risk, i.e., it shall be deemed that INA's liability does not exceed $2,500,000 any one risk; further it is warranted that reinsurance of such risks will be written only excess of $25,000,000 or more underlying insurance and/or reinsurance.

16. Offshore oil rigs and platforms and associated equipment thereon.

17. Risks other than offices, hotels, apartments, hospitals, educational establishments, public utilities (except railroad schedules) and builders risks on the above classes where at the time of cession, the total insured value over all interests exceeds $100,000,000. However, this exclusion shall not apply-

a) to contingent business interruption or interests traditionally underwritten as Inland Marine or to stock and/or contents written on a blanket basis except where INA is aware that the total insured value of $100,000,000 is already exceeded for buildings, machinery, equipment and direct use and occupancy at the key location.

b) with respect to risks on which INA's limit does not exceed $2,500,000.

c) with respect to all other risks provided they are reported by INA to Reinsurers in the next annual report of such risks.

18. Target Risks as per clause attached.

## ARTICLE 3

WAR EXCLUSION

Applies to Property business and Casualty business (other than Liability, Workers' Compensation and Boiler and Machinery).

As regards interests which at time of loss or damage are on shore, no liability shall attach hereto in respect of any loss or damage which is occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority.

This War Exclusion Clause shall not, however, apply to interests which at time of loss or damage are within the territorial limits of the United States of America (comprising the fifty States of the Union and the District of Columbia, its territories and possessions, including the Panama Canal Zone

and the Commonwealth of Puerto Rico and including bridges between the United States of America and Mexico provided they are under United States ownership), Canada, St. Pierre and Miquelon, provided such interests are insured under original policies, endorsements or binders containing a standard war or hostilities or warlike operations exclusion clause.

Nevertheless, this clause shall not be construed to apply to riots, strikes, civil commotion, vandalism, malicious damage, including acts committed by agents of any government, party or faction engaged in war, hostilities, or other warlike operation, providing such agents are acting secretly and not in connection with any operations of military or naval armed forces in the country where the interest insured is situated.

## ARTICLE 4

### COMMENCEMENT AND TERMINATION

This Contract shall take effect at 12:01 a.m., Eastern Standard Time, January 1, 1981, and shall remain in force for an indefinite period, but may be terminated at any 12:01 a.m., January 1 by either party giving to the other 120 days' prior notice.

In the event of termination, the Reinsurers, subject to terms to be mutually agreed, shall remain liable with respect to business in effect at the time of termination until expiration, cancellation, or next anniversary date of such business, whichever comes first, but in no event for more than twelve months.

With respect to all business covered hereunder, except Fidelity and Burglary, this Contract shall apply to each loss occurrence taking place during the term this Contract is in force, except as provided in Article 5.

With respect to Fidelity and Burglary business, this Contract shall apply to loss occurrences discovered during the time this Contract is in force (irrespective of when such occurrences are sustained under the original policies).

If this Contract shall terminate while a loss occurrence covered hereunder is in progress, it is agreed that, subject to the other conditions of this Contract, the Reinsurers shall indemnify INA as if the entire loss occurrence had occurred during the term of this Contract, provided the loss occurrence covered hereunder started before the time of termination.

If any law or regulation of the federal, state or local government of any jurisdiction in which INA is doing business shall render illegal the arrangements made in this Contract, this Contract can be terminated immediately insofar as it applies to such jurisdiction by INA giving notice to the Reinsurers to such effect.

# ARTICLE 5

## REINSURING CLAUSE

As respects the ultimate net loss to the INA arising out of each loss occurrence covered hereunder on which the INA has paid or advanced, or agreed to pay or advance, or becomes liable to pay to or on behalf of its reinsured(s), an amount exceeding the applicable INA retention as set forth in the following schedules, the Reinsurers shall pay to the INA the applicable amount as provided in the Schedule.

## SCHEDULE 1 – CASUALTY BUSINESS

|  | INA Retention | Reinsurers' Liability |
| --- | --- | --- |
| SECTION A | $500,000 ultimate net loss each loss occurrence | The amount the excess of $500,000 ultimate net loss in respect of each loss occurrence, but the amount recoverable hereunder shall not exceed $900,000 (being 90% of $1,000,000) ultimate net loss in respect of such loss occurrence. |
| SECTION B | $1,500,000 ultimate net loss each loss occurrence | The amount the excess of $1,500,000 ultimate net loss in respect of each loss occurrence but the amount recoverable hereunder shall not exceed $3,500,000 ultimate net loss in respect of such loss occurrence. |

## SCHEDULE 2 – PROPERTY BUSINESS

| | INA Retention | Reinsurers' Liability |
|---|---|---|
| SECTION A | $500,000 ultimate net loss each loss occurrence each location | The amount the excess of $500,000 ultimate net loss in respect of each loss occurrence each location, but the amount recoverable hereunder shall not exceed $900,000 (being 90% of $1,000,000) ultimate net loss in respect of each such loss occurrence each location. |
| SECTION B | $1,500,000 ultimate net loss each loss occurrence each location | The amount the excess of $1,500,000 ultimate net loss in respect of each loss occurrence each location, but the amount recoverable hereunder shall not exceed $3,500,000 ultimate net loss in respect of each such loss occurrence each location. |

## SCHEDULE 3 – CASUALTY AND PROPERTY BUSINESS COMBINED

| INA Retention | Reinsurers' Liability |
|---|---|
| $500,000 ultimate net loss each loss occurrence each location | The amount the excess of $500,000 ultimate net loss in respect of each loss occurrence each location, but the amount recoverable hereunder shall not exceed $500,000 ultimate net loss in respect of each such loss occurrence each location. |

Schedule 3 shall apply only with respect to the first $500,000 of ultimate net loss on Casualty business and the first $500,000 of ultimate net loss on Property business.

## SCHEDULE 4 – CASUALTY AND PROPERTY
## BUSINESS COMBINED

|  | INA Retention | Reinsurers' Liability |
|---|---|---|
| SECTION A (applies to Casualty business) | $5,000,000 ultimate net loss each loss occurrence | The amount the excess of $5,000,000 ultimate net loss in respect of each loss occurrence, but the amount recoverable hereunder shall not exceed $500,000 ultimate net loss in respect of each such loss occurrence. |
| SECTION B (applies to Property business) | $5,000,000 ultimate net loss each loss occurrence each location | The amount the excess of $5,000,000 ultimate net loss in respect of each loss occurrence each location, but the amount recoverable hereunder shall not exceed $500,000 ultimate net loss in respect of each such loss occurrence each location. |

Recovery under Schedule 4 shall be made only with respect to the portion of ultimate net loss hereunder for which INA is liable as its share of its ceding companies' adjustment expenses, and such recovery shall be limited to the lesser of:

    a)    the amount by which the entire ultimate net loss exceeds either $5,000,000 each loss occurrence for Casualty business or $5,000,000 each loss occurrence each location for Property business, or

    b)    $500,000.

The Reinsurers' liability set forth in the above schedules shall be further subject to the limitations set forth in Article 8 – Reinstatement.

It is warranted that INA shall be a coinsurer with the Reinsurers for the remaining 10% of the excess loss covered under Section A of Schedules 1 and 2, which amounts together with the INA's retentions under Section A of Schedules 1 and 2 shall be retained by the INA for its own account and unreinsured in any manner except for recoveries from Schedule 3 or from general catastrophe covers.

- 7 -

Notwithstanding the provisions hereinbefore set forth in this Article, it is understood and agreed that:

As respects third party liability where the original policy or policies of INA's ceding company(ies), as regards each original insured, provide for aggregate limits of liability and INA provides reinsurance on the same basis, this Contract shall cover (with respect to each hazard or project subject to an aggregate limit) excess of $500,000 ultimate net loss in the aggregate for each original insured during each aggregate period, but such sum recoverable hereunder shall not exceed $900,000 (being 90% of $1,000,000) under Section A and $3,500,000 under Section B of Schedule 1 and $500,000 under Schedule 3 in the aggregate for each original insured during each original aggregate period.

As respects aggregate coverage afforded by the preceding paragraph, this Contract shall apply to the whole of each aggregate period for each original insured, not exceeding fourteen months and notwithstanding the termination or expiration of this Contract, provided the inception of such period commences during the term of this Contract.

As respects occupational or other diseases, this Contract shall cover excess of $500,000 ultimate net loss in the aggregate for each original policy during for each original policy year for losses sustained by INA resulting from occupational or other diseases suffered by one or more employees of each original insured, but such sum recoverable hereunder shall not exceed $900,000 (being 90% of $1,000,000) under Section A and $3,500,000 under Section B of Schedule 1 and $500,000 under Schedule 3 in the aggregate for each original policy during each original policy year. This Contract shall apply only to losses arising from cases where an employee's cessation from work first occurs during a policy year covered hereunder.

As respects aggregate coverage afforded by the preceding paragraph, this Contract shall apply to the whole of each original policy year notwithstanding the termination or expiration of this Contract, provided the inception of the original policy year commences during the term of this Contract.

However, with respect to original policies having inception dates prior to January 1, 1981, the conditions of this Contract which applied to aggregate coverage prior to this amendment shall continue to apply.

## ARTICLE 6

PREMIUM

INA shall pay to the Reinsurers 24% of the net earned premium of INA's Facultative Department during the term of this Contract.

Net earned premium shall mean the gross earned premium less deduction of the portion of such premium for:

1.   Commission allowed to INA's ceding companies;

2.      Reinsurance which inures to the benefit of Reinsurers hereunder; and

3.      Business or perils excluded by this Contract.

An annual deposit premium of $6,900,000 shall be payable by the INA to Reinsurers in quarterly installments of $1,725,000 at January 1, April 1, July 1 and October 1 of each year. As soon as practicable after December 31, 1981 and each December 31 thereafter the INA shall furnish to Reinsurers a statement of the actual net earned premium for the preceding annual period and adjustment shall be made in accordance with the foregoing paragraphs, subject to a minimum premium of $6,000,000 for each calendar year.

It is further agreed that the premium so determined shall be subject to the provisions of Article 7 – Profit Participation.

ARTICLE 7

PROFIT PARTICIPATION

The Reinsurers shall pay to INA a profit participation of 55% of the amount by which the Reinsurers' income exceeds the Reinsurers' outgo for each rating period.

With respect to the profit participation and the calculation thereof, the following provisions shall apply:

1.      Rating Period

        The first rating period shall be from January 1, 1979 to January 1, 1982 and thereafter each rating period shall consist of 36 months to begin concurrently with the expiration of the previous rating period.

2.      Reinsurers' Income

        This term shall mean the reinsurance premium ceded during the rating period as provided in Article 6.

3.      Reinsurers' Outgo

        This term shall mean the sum of:

        a)      The Reinsurers' payments and reserves for losses and loss expenses less the Reinsurers' share of salvages recovered resulting from loss occurrences during the period.

        b)      20% of the reinsurance premium ceded during the rating period as an allowance for the Reinsurers' expenses (including Federal Excise Tax, if any, payable by Reinsurers).

- 9 -

c)    The amount, if any, by which the Reinsurers' outgo exceeds the Reinsurers' income for the preceding rating period. With regard to the rating period from January 1, 1979 to January 1, 1982, this item shall be the amount, if any, by which the Reinsurers' outgo exceeds the Reinsurers' income for the last rating period under the prior Facultative Department First Excess Cover.

4.    <u>Statements of Profit Participation (Entire Rating Period)</u>

As soon as practicable after the end of each rating period, INA shall render to the Reinsurers a statement of profit participation for the rating period. Any amount of profit participation due INA shall be remitted promptly.

All profit participation calculations shall be adjusted annually thereafter to reflect any changes in the profit participation until all losses are finally settled, and any balance due either party as a result of such adjustments shall be payable immediately.

5.    <u>Interim Adjustments (Annually)</u>

As soon as practicable after the end of each year, the INA shall render to the Reinsurers a statement of interim adjustment of profit participation for the period from the commencement of the rating period until the end of that year. The amount thereof shall be balanced against the amount previously allowed to the INA for the same rating period and the amount due either party shall be remitted promptly.

ARTICLE 8

<u>REINSTATEMENT</u>

In the event of the whole or any portion of the indemnity hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of the loss occurrence without payment of additional premium. Nevertheless, the Reinsurers' liability shall never exceed:

1.    As regards Casualty business, $900,000 (being 90% of $1,000,000) resulting from any one loss occurrence with respect to Section A and $3,500,000 any one loss occurrence with respect to Section B.

2.    As regards Property business, $900,000 (being 90% of $1,000,000) each location resulting from any one loss occurrence with respect to Section A and $3,500,000 each location resulting from any one loss occurrence with respect to Section B.

3.    As regards Property business during any one calendar year resulting from the perils of windstorm, hurricane, tornado, cyclone, hailstorm, flood, earthquake, riot and civil commotion, $3,600,000 (being 90% of $4,000,000) with respect to Section A and $7,000,000 with respect to Section B.

- 10 -

4.   As regards a combined loss for Property business and Casualty business under Schedule 3, $500,000 each location resulting from any one loss occurrence.

5.   As regards a combined loss for Property business and Casualty business under Schedule 4, $500,000 resulting from any one loss occurrence with respect to Section A and $500,000 each location resulting from any one loss occurrence with respect to Section B.

## ARTICLE 9

## DEFINITION OF "LOSS OCCURRENCE"

The term "loss occurrence" as used herein shall mean any one accident, disaster, casualty or occurrence, or series of accidents, disasters, casualties or occurrences arising out of or caused by one event, regardless of the number of interests insured or the number of policies involved or the number or kinds of perils involved, provided that:

1.   As respects Products Personal Injury Liability Insurance, Products Property Damage Liability Insurance and Products Recovery Insurance (if any), it is also understood that:

Injuries to all persons and all damage to property of others occurring during a policy period and proceeding from or traceable to the same causative agency (including any Products Recovery Insurance loss occurring during the same period and directly related to the same causative agency) shall be deemed to arise out of one loss occurrence and the date of such loss occurrence with respect to policies which take effect after the inception date of this Contract shall be deemed to be the commencing date of the policy period, and the date of such loss occurrence with respect to business in force at the inception date of this Contract shall be deemed to be the inception date of this Contract but only with respect to such loss which occurs during the term of this Contract. For the purpose of this provision, each annual period of a policy which continues in force for more than one year shall be deemed to be a separate policy period.

The word "injuries" as used in this paragraph 1 includes but is not limited to infection, contagion, poisoning or contamination.

2.   As respects Property Damage Liability Insurance (other than Automobile and Products) said term shall also, subject to provisions a) and b) below, mean loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same.

- 11 -

In assessing each and every loss occurrence within the foregoing definition it is understood and agreed that:

a)    the series of operations, events or occurrences shall not extend over a period longer than twelve (12) consecutive months;

and

b)    INA may elect the date on which the period of not exceeding twelve (12) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than twelve (12) consecutive months, then each consecutive period of twelve (12) months, the first of which commences on the date elected under b) above, shall form the basis of claim under this Contract.

3.    As respects classes of business reinsured under this Contract, other than the classes of business otherwise mentioned in this Article, said term shall also mean, as regards each original insured, injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency during an annual policy period. For the purpose of this provision, the date of such loss occurrence with respect to policies which take effect after the inception date of this Contract shall be deemed to be the commencing date of the policy period, and the date of such loss occurrence with respect to business in force at the inception date of this Contract shall be deemed to be the inception date of this Contract but only with respect to such loss which occurs during the term of this Contract. For the purpose of this provision, each annual period of a policy which continues in force for more than one year shall be deemed to be a separate policy period.

4.    As respects business classified by INA as Fidelity, said term shall mean:

a)    any loss or series of losses whether covered under one or more policies resulting from acts or omissions of any one person or in which such person is concerned or implicated;

or

b)    any loss or losses, other than as specified in a) above and whether covered under one or more policies resulting from any one casualty or event.

It is further agreed that any definition of a single loss occurrence or contingency under any policy covered by this Contract which is in conflict with a) or b) above, shall not apply.

- 12 -

5.     As respects business where the cause of loss is neglect, error or omission, it is understood that such neglect, error or omission shall be deemed to be a loss occurrence within the meaning hereof.

6.     As respects business covered hereunder where the original policies apply on a "losses discovered" basis (i.e., policies providing that the date of the discovery of the loss by the original insured shall be deemed to be the date on which the occurrence took place) or on a "claims made" basis (i.e. policies providing that the date of the first report of the claim to the original insured or to the original insurer shall be deemed to be the date on which injury or damage was caused and upon which the occurrence took place), the date of discovery of loss or the date of first report of such claim shall be deemed to be the date of the loss occurrence for the purposes of this Contract, provided the date of discovery of the loss or the date of the first report of the claim is within the term of this Contract.

For the purpose of the foregoing, the date of the first discovery of loss by the original insured or the date the claim is first made against the original insured or the original insurer shall be the date applicable to the entire loss or claim and the Reinsurers shall be liable for their proportion of the entire loss or claim irrespective of the expiration date of this Contract and provided that such first discovery date or first date such claim is notified falls within the period of this Contract.

However, when an original policy is cancelled or not renewed and an extension of the discovery period is afforded by the original insurer and by INA for losses discovered or claims made after the cancellation or non-renewal, such losses or claims shall be deemed to have been discovered or made during the original policy period which precedes the cancellation or non-renewal.

7.     As respects loss occasioned by windstorm, hurricane, tornado, cyclone and hailstorm in connection with Property business, said term shall mean all loss or series of losses occurring during a continuous period of 72 consecutive hours and arising out of or caused by the same atmospheric disturbance.

8.     As respects losses occasioned by the perils of riot, riot attending a strike, civil commotion, vandalism and malicious mischief in connection with Property business, including losses from all other perils covered hereunder following as a result of the aforesaid perils, said term shall mean all loss or series of losses occurring during any period of 72 consecutive hours within the area of one principal municipality or county and the municipalities or counties contiguous thereto.

9.     As respects losses occasioned by the peril of earthquake in connection with Property business, said term shall mean all loss or series of losses occurring during a continuous period of 72 consecutive hours (whether such peril is continuous or sporadic in scope and irrespective of whether or not such loss or losses originated from the same seismic condition).

- 13 -

It is understood and agreed that INA may elect the moment from which any of the 72-hour periods specified in paragraphs 7, 8, and 9 of this Article shall be deemed to have commenced, but not earlier than the time of the occurrence of the first recorded loss to INA which is included in the ultimate net loss hereunder. However, no two periods in respect of the same occurrence shall overlap.

## ARTICLE 10

### DEFINITION OF "LOCATION"

The term "location" shall mean any one complex of two or more buildings situated on the same property of one original insured; otherwise each building shall constitute a separate location.

## ARTICLE 11

### ULTIMATE NET LOSS

The term "ultimate net loss" shall mean the actual loss or losses paid or payable by INA under its policies, such loss or losses to include expenses of litigation, if any, and all other loss expenses of INA (including a pro rata share of salaries and expenses of INA's field employees while adjusting such claims or losses and of expenses of INA's officials incurred in connection with claims or losses, but no salaries of INA's officials or any normal overhead charges, such as rent, postal, lighting, cleaning, heating, etc., shall be included) less deductions for all recoveries (including amounts recoverable under other reinsurance except catastrophe reinsurance) and salvages actually made by INA, provided always that nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until INA's ultimate net loss has been ascertained.

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

Whenever INA issues a lost instrument bond or a lost instrument letter of indemnity for salvage purposes or in lieu of loss payment under its policy, Reinsurers agree to accept liability under such bond or letter of indemnity in accordance with the terms of this Contract.

## ARTICLE 12

### NET RETAINED LINES

Except as otherwise provided in Article 11, this Contract applies only to that portion of any reinsurance which INA retains net for its own account, and in calculating the amount of any loss hereunder and also in computing the amount or amounts in excess of which this Contract attaches, only loss or losses in respect of that portion of any reinsurance which INA retains net for its own account shall be included.

The amount of Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of INA to collect from any other Reinsurers whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Reinsurers or otherwise.

## ARTICLE 13

### EXCESS OF ORIGINAL POLICY LIMITS

This Contract shall protect INA within the limit hereof, in connection with any loss for which INA may be obligated to pay in excess of the limit of the original policy, where loss in excess of the limit has been incurred because of failure to settle within the policy limit or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement or in the preparation of the defense or in the trail of any action against the original insured or in the preparation or prosecution of an appeal consequent upon such action.

## ARTICLE 14

### NOTICE OF LOSS AND LOSS SETTLEMENTS

In the event of a loss occurrence which either results in or appears to be of serious enough nature as probably to result in a loss involving this Contract, INA shall give notice as soon as reasonably practicable to Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038.

The Reinsurers agree to abide by the loss settlements of INA, such settlements to be considered as satisfactory proofs of loss, and amounts falling to the share of the Reinsurers shall be immediately payable to INA by them upon reasonable evidence of the amount paid by INA being presented to Reinsurers through Guy Carpenter & Company, Inc. by INA. All papers in the possession of INA in connection with the adjustment of said loss shall at all times within a reasonable period be open to the inspection of a properly authorized representative of the Reinsurers.

## ARTICLE 15

### LOSS RESERVES

(Applies only to those Reinsurers who do not qualify for credit by any state or any other governmental authority having jurisdiction over INA's loss reserves.)

As regards policies or bonds issued by INA coming within the scope of this Contract, INA agrees that, when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law, it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them. The Reinsurers hereby agree to apply for and secure delivery to INA a clean irrevocable Letter of Credit issued by any bank acceptable to the governmental authority having jurisdiction over INA's loss reserves in an amount equal to Reinsurers' proportion of said loss reserves.

- 15 -

INA agrees to use and apply any amounts which it may draw upon such credit for the following purposes only:

    (a)   To pay the Reinsurers' share or to reimburse INA for the Reinsurers' share of any liability for loss reinsured by this Contract.

    (b)   To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this Contract.

The designated bank shall have no responsibility whatsoever in connection with the propriety of withdrawals made by INA or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatives of INA.

## ARTICLE 16

REINSURANCE TAX

In consideration of the terms under which this Contract is issued, INA undertakes not to claim any deduction of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States of America or to the District of Columbia.

## ARTICLE 17

FEDERAL EXCISE TAX

(Applies only to those Reinsurers, excepting Underwriters at Lloyd's, London and other Reinsurers exempt from the Federal Excise Tax, who are domiciled outside the United States of America.)

The Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

In the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% from the amount of the return and INA or its agent should take steps to recover the Tax from the U.S. Government.

## ARTICLE 18

CURRENCY

Wherever the word "Dollars" or the sign "$" appear in this Contract, they shall mean United States Dollars, excepting in those cases where the policies are issued by INA in Canadian Dollars in which cases they shall mean Canadian Dollars.

In the event of INA being involved in a loss requiring payment in United States and Canadian Currency, INA's retention and the amount recoverable hereunder shall be apportioned to the two currencies in the same proportion as the amount of ultimate net loss in each currency bears to the total amount of ultimate net loss paid by INA.

For purposes of this Contract, where INA receives premiums or pays losses in currencies other than United States or Canadian Currency, such premiums and losses shall be converted into United States Dollars at the actual rates of exchange at which these premiums and losses are entered in INA's books.

## ARTICLE 19

### ACCESS TO RECORDS

The Reinsurers or their duly accredited representative shall have free access to the books and records of INA at all reasonable times for the purpose of obtaining information concerning this Contract or the subject matter thereof.

## ARTICLE 20

### INDEMNIFICATION AND ERRORS AND OMISSIONS

Any recitals in this Contract of the terms and provisions of the original policy or policies are merely descriptive; and the Reinsurers are reinsuring, to the amounts herein provided, the obligations of INA under the original policy or policies. INA shall be the sole judge as to what shall constitute a claim or loss covered under its original policy or policies, as to its liability thereunder, and as to amount or amounts which it shall be proper for INA to pay thereunder. Reinsurers shall be bound by the judgment of INA as to the liability and obligation of INA under its policy or policies.

Any inadvertent delay, omission or error shall not be held to relieve either party hereto from any liability which would attach to it hereunder if such delay, omission or error had not been made, provided such delay, omission or error is rectified immediately upon discovery.

## ARTICLE 21

### SERVICE OF SUIT

(Applies only to those Reinsurers who are domiciled outside the United States of America.)

In the event of the failure of Reinsurers hereon or any of them to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of INA will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Messrs. Mendes and Mount, 3 Park Avenue, New York, New York 10016; and in any suit instituted against any one of them upon this Contract, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of INA to give a written undertaking to INA that they will enter a general appearance on behalf of Reinsurers or any of them in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of INA or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named Mendes and Mount as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

## ARTICLE 22

### INSOLVENCY

In the event of the insolvency of INA, this reinsurance shall be payable directly to INA, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of INA without diminution because of the insolvency of INA or because the liquidator, receiver, conservator or statutory successor of INA has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of INA shall give written notice to the Reinsurers of the pendency of a claim against INA indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defense or defenses that they may deem available to INA or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable subject to the approval of the court, against INA as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to INA solely as a result of the defense undertaken by the Reinsurers.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance Contract as though such expense had been incurred by INA.

The reinsurance shall be payable by the Reinsurers to INA or to its liquidator, receiver, conservator or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Contract specifically provides another another payee of such reinsurance in the event of the insolvency of INA, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of INA as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of INA to such payees.

The above named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of INA to give a written undertaking to INA that they will enter a general appearance on behalf of Reinsurers or any of them in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of INA or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named Wilson, Elser, Edelman and Dicker as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

ARTICLE 22

INSOLVENCY

In the event of the insolvency of INA, this reinsurance shall be payable directly to INA, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of INA without diminution because of the insolvency of INA or because the liquidator, receiver, conservator or statutory successor of INA has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of INA shall give written notice to the Reinsurers of the pendency of a claim against INA indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defense or defenses that they may deem available to INA or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable subject to the approval of the court, against INA as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to INA solely as a result of the defense undertaken by the Reinsurers.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance Contract as though such expense had been incurred by INA.

The reinsurance shall be payable by the Reinsurers to INA or to its liquidator, receiver, conservator or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Contract specifically provides another another payee of such reinsurance in the event of the insolvency of INA, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of INA as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of INA to such payees.

- 18 -

## ARTICLE 23

### ARBITRATION

As a precedent to any right of action hereunder, if any dispute shall arise between INA and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Contract, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots. All arbitrators shall be executive officers of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this Contract.

The arbitrators shall interpret this Contract as an honorable engagement and not as merely a legal obligation, they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view to effecting the general purpose of this Contract in a reasonable manner rather than in accordance with a literal interpretation of the language. Each party shall submit its case to its arbitrator within thirty days of the appointment of the third arbitrator.

The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties. Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the third arbitrator and of the arbitration.  Said arbitration shall take place in the city in which INA's Head Office is located unless some other place is mutually agreed upon by INA and the Reinsurers.

## ARTICLE 24

### INTERMEDIARY

Guy Carpenter & Company, Inc. is hereby recognized as the Intermediary negotiating this Contract for all business hereunder, except Canadian business on which Guy Carpenter & Company (Canada) Limited is hereby recognized as the Intermediary. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to INA or the Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038 (acting on behalf of itself and Guy Carpenter & Company (Canada) Limited). Payments by INA to the Intermediary shall be deemed to constitute payment to the Reinsurers.  Payments by the Reinsurers to the Intermediary shall be deemed only to constitute payment to INA to the extent that such payments are actually received by INA.

## ARTICLE 25

CONTINUITY

With respect to Reinsurers who participated in the prior Contract, this Contract replaces and continues the preceding Contract and nothing herein contained shall alter or affect the continuity granted by the said preceding Contract.

*EXHIBIT B*

IN THE ARBITRATION BETWEEN

| | | |
|---|---|---|
| **ACE American Reinsurance Company** | : | |
| | : | |
| **Petitioners,** | : | Dewey Clark, Umpire |
| | : | Andrew S. Walsh, Esq., Arbitrator |
| **v.** | : | Earl Davis, Arbitrator |
| | : | |
| **Constellation Reinsurance Company** | : | |
| **Respondents** | : | |
| | : | |

## FINAL AWARD

     The arbitrators empanelled to hear and decide the captioned arbitration between ACE American Reinsurance Company, Petitioners, and Constellation Reinsurance Company, Respondents, having considered the information contained in the parties' hearing briefs and accompanying exhibits, as well as testimony of the witnesses called by Petitioners and Respondents and the arguments presented by the parties' counsel during a hearing held in New York, New York on January 4-5, 2006, hereby rule as follows:

1. The panel awards Petitioners $377,212.00 on the Genstar and Pfizer claim, and $111,000.00 on additional billings on claims which were originally contained in the May 2004 arbitration demand.
2. This award is to be paid by Respondents to Petitioners within 30 days from the date of this award.
3. Additional claims presented by Petitioners at the hearing, but which had not been included in the May 2004 arbitration demand, were determined to be outside the scope of this arbitration and panel makes no finding on the merits of those claims.
4. All other requested relief is denied.

Award advised to counsel Monday, January 9, 2006.


Andrew S. Walsh, Esq.
Arbitrator

Earl Davis
Arbitrator

Dewey P. Clark
Umpire

EXHIBIT
B